UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
    UNITED STATES OF AMERICA

       - v. -

                                       S1 17 Cr. 23 (RJS)
    JOSE ARNALDO ARLOS PEREZ
        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING SUBMISSION

                                          JOON H. KIM
                                          Acting United States Attorney for the
                                          Southern District of New York
                                          One St. Andrew's Plaza
                                          New York, NY 10007

Jason M. Swergold
Amanda L. Houle
Benet J. Kearney
Jonathan Rebold
Assistant United States Attorneys
   -Of Counsel-



*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 25, 2017

**BY ECF and BY HAND**

Honorable Richard J. Sullivan
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *United States* **v.** *Jose Arnaldo Arlos Perez*, **S1 17 Cr. 23 (RJS)**

Dear Judge Sullivan:

  The defendant, Jose Arnaldo Arlos Perez, is scheduled to be sentenced on August 1, 2017, for his offense in this case; namely, destroying and attempting and conspiring to destroy property that is subject to forfeiture pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970 while on board a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Section 70503(a)(2). The Government respectfully makes this submission in advance of the sentencing.

  Under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), the parties and the United States Probation Department ("Probation") agree that the Guidelines range applicable to the defendant's conduct is 70 to 87 months' imprisonment. For the reasons set forth below, the Government respectfully submits that the offense warrants a significant sentence, but one that is below the Guidelines range.

## Background

  A. **Offense Conduct**

  As set forth in the Presentence Report ("PSR"), on or about November 6, 2016, a United States Coast Guard cutter (the "Cutter") was on routine patrol approximately 290 nautical miles south of Huatulco, Mexico, when it detected two go-fast vessels ("Go-Fast 1" and "Go-Fast 2,"

collectively the "Go-Fast Boats"). The Cutter pursued the Go-Fast Boats; while in pursuit, crew members observed individuals on board the Go-Fast Boats throwing bales overboard.[1] (PSR ¶ 19). The Cutter launched a helicopter and two patrol boats to intercept the Go-Fast Boats. Although the Cutter briefly lost sight of the Go-Fast Boats, no other vessels were reported in the area at the time, and the Cutter soon reacquired visual contact with one of them – Go-Fast 2. (PSR ¶ 20). One of the Cutter's patrol boats gained control over Go-Fast 2 after Go-Fast 2 became dead in the water. A boarding team from the patrol boat (the "Boarding Team") conducted a right of visit boarding of Go-Fast 2 and found the defendant, along three other individuals – his co-defendants – on board. (PSR ¶ 21). The Boarding Team observed that Go-Fast 2 had neither a vessel name or registration. (*Id.*). In response to questioning by the Boarding Team, the defendant claimed Mexican nationality for both himself and Go-Fast 2. When the Coast Guard contacted Mexican authorities to confirm this information, the Mexican authorities denied the claim of nationality for Go-Fast 2 and the Coast Guard authorized the Boarding Team to treat Go-Fast 2 as a vessel without nationality. (PSR ¶ 22).

In addition to the bales that the Cutter crew members observed being thrown overboard – or jettisoned – the Coast Guard located a second jettison field approximately 20 nautical miles south of where Go-Fast 2 was interdicted and an abandoned go-fast vessel approximately 35 nautical miles south of the site where Go-Fast 2 was interdicted. (PSR ¶ 23). In response to questioning, two of the defendant's co-defendants informed the Boarding Team that they had abandoned a go-fast boat – which matched the description of the abandoned go-fast – prior to boarding Go-Fast 2. (*Id.*). In total, the Coast Guard recovered approximately 1,214 kilograms of cocaine. (PSR ¶ 24).

### B. The Charges and the Defendant's Guilty Plea

The one-count superseding Information charges that the defendant destroying, and attempting and conspiring to destroy, property that is subject to forfeiture under Section 511(a) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 on board a vessel subject to the jurisdiction of the United States. (PSR ¶-2). On April 26, 2017, the defendant pleaded guilty to the Information. (PSR ¶ 4).

### C. The Guidelines Range

The parties do not dispute the PSR's calculation of the offense level under the Guidelines, which calculates the applicable offense level as 27 (PSR ¶ 40) and the defendant's Criminal History Category as I (PSR ¶ 44). This results in a Guidelines range of 70 to 87 months' imprisonment. (PSR ¶ 64).

### Discussion

The general purposes of sentencing include the need for the sentence imposed to promote respect for the law, to afford adequate deterrence to criminal conduct, and to protect the public

---

[1] The defendant himself participated in the jettisoning of the bales, which were subsequently determined to contain cocaine. (PSR ¶¶ 24, 29).

from further crimes of the defendant. *See United States* v. *Park*, 758 F.3d 193, 197 (2d Cir. 2014) (citing 18 U.S.C. § 3553(a)(2)). In the Government's view, although a Guidelines sentence is greater than necessary to serve the goals, a significant sentence is required to achieve these ends. Such a sentence would dissuade the defendant from participating in this conduct again. Furthermore, a substantial term of imprisonment would help to assure that others also do not engage in the same conduct themselves.

The Government does not assert that the defendant is a significant drug trafficker. But the Government does contend that the role that the defendant played is an essential one to the narcotics trade. Before cocaine can be distributed to other parts of the world, including the United States, it must first be transported from South America to other locations. That is a fundamental and key step in trafficking cocaine. That is the role that, in this shipment, the defendant played.

Dissuading individuals from agreeing to participate in this stage of the distribution activity is an important means of disrupting narcotics trafficking. While the defendant asserts that his reasons for undertaking this particular offense were other than financial (Defendant's Sentencing Submission ("Def. Sent. Mem") at 3), the circumstances under which he embarked on this offense certainly indicated that the activities he was asked to undertake were out-of-the-ordinary and nefarious in nature. For example, the defendant and his companion were asked to board a go-fast boat that was carrying a significant amount of fuel – as is common for boats that are planning to transport large quantities of narcotics or to assist in the re-fueling of other vessels that are carrying narcotics. (*Id.*). The defendant was told by men wearing ski-masks that he was going to transport "some stuff" – i.e., drugs. (*Id.*) And the defendant was given a compass and a GPS-type device that he was instructed to attached to the drug cargo that we would receive. (*Id.* at 4). One way to deter both the defendant from re-offending, and others from committing the same conduct, for whatever reason, is to demonstrate that engaging in such conduct will come with serious consequences, such as a significant term of imprisonment. Imposing a significant term of imprisonment will thus serve both specific and general deterrence, two aims of the sentencing regime. The Government respectfully submits that, while a Guidelines sentence is not necessary to serve those purposes, a substantial term of imprisonment is.

While the defendant does not request a particular sentence, he cites to several cases in this District involving similar conduct in which defendants have received sentences ranging from seven to 24 months. (Def. Sent. Mem. ¶ 6). The defendant's list does not, however, include the sentences imposed in cases with docket numbers from 2015, including the sentences recently imposed by Chief Judge McMahon in *United States* v. *Nestor Rodriguez Paredes*, 15 Cr. 874 (CM), Dkt. 66 (48 months' imprisonment) and *United States* v. *Yimmi Jafet Montano Preciado*, 15 Cr. 874 (CM), Dkt. 71 (32 months' imprisonment). Even accounting for these sentences; the range of sentences imposed in this District is significantly lower than sentences imposed on similarly situated defendants in other districts who have committed similar conduct. *See generally*, *United States* v. *Trinidad*, 839 F.3d 112 (1st Cir. 2016) (defendant caught with 144 kilograms of cocaine, and who received a two-point navigator enhancement, sentenced to 108 months' sentence); *United States* v. *Wilchombe*, 838 F.3d 1179 (11th Cir. 2016) (defendants caught with 35 kilograms of cocaine and 860 kilograms of marijuana sentenced to 120 months' imprisonment); *United States* v. *Macias*, 654 Fed. App'x 458 (11th Cir. 2016) (defendant caught with approximately 300 kilograms of cocaine sentenced to 120 months' imprisonment); *United States* v. *Persaud*, 605 Fed. App'x 791

3

(11th Cir. 2015) (defendant caught with approximately 1200 kilograms of marijuana sentenced to 132 months' imprisonment); *United States* v. *Nueci-Pena*, 711 F.3d 191 (1st Cir. 2013) (defendant caught with over 1140 pounds (approximately 517 kilograms) of cocaine and heroin sentenced to 24 years' imprisonment).  *See also* 18 U.S.C. § 3553(a)(6) (directing courts to consider at sentencing "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

        Ultimately, a substantial term of imprisonment is necessary to reflect the nature, circumstances, and seriousness of the offense, to promote respect for the law, and to provide just punishment.  *See* 18 U.S.C. § 3553(a)(1), (2)(A).  But for the interdiction of the go-fast, the defendant would have been responsible for delivering approximately 1,214 kilograms of cocaine – an exorbitant amount with an estimated street value in New York City of over $10 million – from its point of supply in Colombia, up the distribution chain to Central America, where it becomes almost impossible to stop from coming into the United States.  *See* Lt. Comm. Brendan Gavin, et. al., *U.S. Southern Command's Role in Combatting Illicit Trafficking*, 4 U. Miami Nat'l Sec. & Armed Conflict L. Rev. 12, 16, 17 (2014) (noting that "approximately 95% of cocaine entering the U.S. travels through Central America" and "[o]nce ashore in Central America, there is almost no stopping the majority of this cocaine before it enters the United States and lands on street corners across America."); *United States* v. *Carvajal*, 924 F. Supp. 2d 219, 242 (D.D.C. 2013) ("It is beyond peradventure that illegal drugs are a problem in the United States, and, specifically, that cocaine imported to the United States from Colombia is a major part of that problem."), *aff'd sub nom. United States* v. *Miranda*, 780 F.3d 1185 (D.C. Cir. 2015).

**Conclusion**

For the reasons set forth above, the Government does not seek a Guidelines sentence, but respectfully submits that the defendant should be sentenced to a significant term of imprisonment.

>Respectfully submitted,
>
>JOON H. KIM
>Acting United States Attorney
>
>
>By: __/s/ Benet J. Kearney_____
>    Jason M. Swergold
>    Amanda L. Houle
>    Benet J. Kearney
>    Jonathan Rebold
>    Assistant United States Attorneys
>    (212) 637-1023/2194/2260/2512

5